```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                       FORT LAUDERDALE DIVISION
                      CASE NO. 0:17-cr-60022-BB-1
 3

 4    UNITED STATES OF AMERICA,

 5           Plaintiff,                       June 9, 2017
                                              2:32 p.m.
 6           vs.

 7    ESTEBAN SANTIAGO-RUIZ,

 8           Defendant.                       Pages 1 THROUGH 25

 9    _____

10
                      TRANSCRIPT OF STATUS CONFERENCE
11                 BEFORE THE HONORABLE BETH BLOOM
                     UNITED STATES DISTRICT JUDGE
12

13    Appearances:

14    FOR THE GOVERNMENT:  UNITED STATES ATTORNEY'S OFFICE
                           RICARDO A. DEL TORO, AUSA
15                         99 Northeast 4 Street, Suite 620
                           Miami, Florida 33132
16
                           UNITED STATES ATTORNEY'S OFFICE
17                         LAWRENCE D. LAVECCHIO, AUSA
                           500 East Broward Boulevard, 7th Floor
18                         Fort Lauderdale, Florida 33394

19    FOR THE DEFENDANT:   FEDERAL PUBLIC DEFENDER'S OFFICE
                           ERIC MARTIN COHEN, FPD
20                         HECTOR DOPICO, FPD
                           150 West Flagler Street, Suite 1700
21                         Miami, Florida 33130-1556

22    COURT REPORTER:      Yvette Hernandez
                           U.S. District Court
23                         400 North Miami Avenue, Room 10-2
                           Miami, Florida 33128
24                         yvette_hernandez@flsd.uscourts.gov

25
```

1          (Call to order of the Court, 2:32 p.m.)

2          COURTROOM DEPUTY:  Calling Case Number 17-60022,

3   Criminal, United States of America v. Esteban Santiago-Ruiz.

4          Counsel, please state your appearances for the record.

5          MR. DEL TORO:  Good afternoon, Your Honor.  Rick Del

6   Toro and Larry LaVecchio on behalf of United States.

7          THE COURT:  Good afternoon to each of you.

8          MR. COHEN:  And good afternoon, Your Honor.  Eric

9   Cohen and Hector Dopico, from the Federal Defender's Office, on

10   behalf of Mr. Santiago-Ruiz, who is present before the Court.

11          THE COURT:  Good afternoon to each of you as well.

12          Go ahead and have seat.

13          As the parties know, the Court set this for a status

14   conference and has been scheduling the status conferences in

15   order to monitor Mr. Santiago-Ruiz's mental health.  As the

16   Defense has acknowledged, there is a mental illness that has

17   been diagnosed and Mr. Santiago-Ruiz has been taking medication

18   as a result of that diagnosed mental illness.

19          The issue before the Court is focusing on the second

20   prong, and that is whether that diagnosed mental illness

21   renders Mr. Santiago-Ruiz unable to understand the nature and

22   consequences of the proceedings against him and to assist

23   properly in his defense.

24          Mr. Cohen, I thank you for providing the Court with

25   the status report relating to the efforts that have been made

1    by the Defense team.  And I'm referring to Docket Entry 37 that

2    has reflected that since the last status conference your team,

3    consisting of a mental health counselor and the attorneys, have

4    visited Mr. Santiago-Ruiz 13 times since our last status

5    conference.

6         I recognize that on June 5th there was an issue with

7    regard to the FDC.  But am I correct that you have, in fact,

8    visited Mr. Santiago-Ruiz and consulted with him with regard to

9    the discovery since that time?

10        MR. COHEN:  Yes.  I want to clarify, Your Honor, the

11   mental health consultant was unable to visit with him during

12   this period because she had gone on the 5th.  But as I

13   indicated in the status report, the medical staff at FDC

14   themselves have visited with him three times since the last

15   status conference, twice by a psychologist and once by a

16   psychiatrist, to monitor the medication.  And their reports

17   indicate no change in his mental condition and no issues as to

18   his competency.

19        THE COURT:  No change, meaning that Mr. Santiago-Ruiz

20   is adhering to the same medication regimen that was originally

21   prescribed?

22        MR. COHEN:  Yes, ma'am.

23        THE COURT:  And what would that consist of?

24        MR. COHEN:  He's taking Haldol.  I'm not sure what the

25   dosage is at this point in time.  I think he's taking it twice

```
1    a day, maybe five milligrams in the morning and 10 in the
2    evening.  I think there may have been one session where he did
3    not take it.  But other than that, in the last six weeks since
4    we've been before the Court last, he has been completely
5    compliant with his medicine regimen.
6              THE COURT:  And you stated that Mr. Santiago-Ruiz is
7    seeing a mental health counselor at the FDC, in addition to the
8    mental health consultant that is working with the Defense team?
9              MR. COHEN:  Well, because of his mental health issues,
10   he is being monitored by the staff at FDC.  And again, we've
11   received records from FDC that reflect that since we were here
12   last he was seen by professionals on three occasions.  And
13   again, their reports all indicate that he's oriented to time,
14   space, person, and circumstances and that there are no overt
15   signs of psychosis.
16             THE COURT:  And those are the reports from the mental
17   health professionals at the FDC?
18             MR. COHEN:  Yes, ma'am.
19             THE COURT:  And do you also have the reports from the
20   Broward County Jail before Mr. Santiago-Ruiz was transported?
21             MR. COHEN:  Yes.  We've received them ourselves and
22   they have also been provided to us in discovery.
23             THE COURT:  And Mr. Cohen, based on the number of
24   times that you have visited with Mr. Santiago-Ruiz, can you
25   apprise the Court, have there been any times -- and I stated
```

1    the 13.  So there were 13 times in which you spent time with

2    Mr. Santiago-Ruiz at the FDC.  Have there been any occasions in

3    which you were concerned that as a result of

4    Mr. Santiago-Ruiz's mental illness that he has been unable to

5    assist you with regard to preparing for the defense of this

6    case?

7             MR. COHEN:  Your Honor, again, just to clarify, I have

8    not personally seen him, but some member of the team -- and

9    we've been working actually in pairs -- have seen him that

10   number of times.  The times I have seen him, I have no concern

11   at all about his competence.  I would guess and I would hope

12   that if another member of the team had some issue that I would

13   be advised of that.  And nobody has reported to me any concerns

14   about his competence or mental condition at the present time.

15            THE COURT:  Well, who beside yourself, Mr. Cohen?  Has

16   Mr. Dopico also been visiting with Mr. Santiago-Ruiz?

17            MR. COHEN:  He has.  And as Your Honor may know, we

18   have two other attorneys from our office staffed to assist in

19   the case, and they have both -- in fact, they are both in court

20   today -- and they have both also seen him.  We have a

21   mitigation specialist who has also seen him and we have

22   investigators who have also seen him as the need arises.  And

23   they all know that if there is some question about competency,

24   they should advise me so I could advise the Court.

25            THE COURT:  All right.  And Mr. Dopico, I'm going to

1    address the question to you, sir.  Have there been any

2    concerns, based on your observations and your meetings with Mr.

3    Santiago-Ruiz, as to his ability to assist in his defense and

4    consult with counsel?

5            MR. DOPICO:  No, Your Honor.

6            THE COURT:  All right.  Thank you.

7            Mr. Cohen, moving forward, I am going to require that

8    you file under seal with the Court the records, including the

9    consultations with the mental health counselors at the FDC, as

10   well as the records from the Broward County Jail, to be filed

11   with the Court under seal for the Court's review.

12           MR. DOPICO:  Yes, ma'am.

13           THE COURT:  Mr. Del Toro, or Mr. LaVecchio, I would

14   ask that you apprise the Court of the status of discovery.  I

15   know you've been kind enough to file the report, but I would

16   like to hear where we are moving forward.

17           MR. DEL TORO:  Yes, Judge.

18           We have provided to the Defense three rounds of

19   discovery, essentially.  In the first response to the standing

20   discovery order, we provided 10 DVDs that contained a wide --

21   broad range of discovery, including Defendant's statements,

22   agents' reports, both materials that are discoverable under the

23   rules, as well as, as a courtesy, materials that are not

24   discoverable.

25           In the second round of discovery, which was the first

1    supplemental response to the standing discovery order, we

2    provided one DVD that included records of autopsies, as well as

3    videos.

4         And then in the third round of discovery, we have

5    provided to the Defense two hard drives, approximately two

6    terabytes in size each.  One of which contained the digital

7    images of all the digital devices that were seized in this

8    case, as well as video from -- surveillance video from a

9    certain location.

10        In addition to the two terabyte hard drives -- the two

11   two terabyte hard drives, we also provided an additional DVD

12   that contained additional discovery material.

13        So there's a significant amount of discovery that's in

14   their hands.  Still outstanding are responses from several

15   trial subpoenas that we have issued, and we have not received

16   responses, as well as additional investigation that we believe

17   will be necessary going forward with the case.

18        THE COURT:  Can you be specific with regard to the

19   outstanding discovery.

20        MR. DEL TORO:  We have subpoenaed a number of records,

21   including additional medical records of victims, some of the --

22   actually, the psychiatric records which the Defense already has

23   and we don't yet have from FDC, which we've subpoenaed as well.

24        And as I mentioned to the Court before, we're

25   continuing the investigation.  We think that there are

1    additional investigative steps that we need to take in order to

2    obviously obtain all of the information that's going to be

3    relevant to the case.  And we'll be continuing with the rolling

4    discovery and meeting our discovery obligations as soon as we

5    receive those.

6        THE COURT:  Mr. Del Toro, I'm going to ask you to be

7    very specific.  You referred to medical records of the victims,

8    the psychiatric records at the FDC.  What outstanding discovery

9    are you waiting for and has yet to be turned over to the

10   Defense?

11       MR. DEL TORO:  Well, that, we're waiting for -- both

12   of those.  Although the Defense just indicated to the Court

13   that they have the FDC records.  So in that sense, there's no

14   discovery to give to them because they already have the FDC

15   records.  We need to obtain them for our purposes, and we will

16   turn them over as well just for the sake of completeness.

17       We have additional investigative steps.  For example,

18   potentially search warrants of different facilities that we may

19   seek to get.  And that's something that we're still exploring,

20   we're still investigating.

21       THE COURT:  So at this point in time, you've stated

22   that the outstanding discovery -- which, you've noted that the

23   Defense team has the psychiatric records from the FDC -- the

24   medical records of the victims.  And you stated that there are

25   responses for trial subpoenas?

1          MR. DEL TORO:  Yes, Judge.

2          THE COURT:  What responses would be part of discovery?

3          MR. DEL TORO:  These are the responses that we expect

4    from -- in other words, we have issued trial subpoenas, as

5    opposed to Grand Jury subpoenas, for these records.  We're

6    waiting for those responses.  Once we get them, we'll turn them

7    over in the rolling discovery.

8          THE COURT:  Is there anything else that you are

9    waiting for in order to turn over to the Defense?

10          MR. DEL TORO:  No, Judge.

11          THE COURT:  And the reason why I ask that,

12   Mr. Del Toro, and as to Mr. Cohen, is the last time that we

13   were together, we discussed the timing in terms of a mitigation

14   packet to be provided to the US Attorney's Office for review

15   before it was submitted to the Attorney General, in terms of a

16   decision as to whether the Government was seeking the death

17   penalty in this case.  And I would like to set a schedule, but

18   I want the schedule to be a realistic schedule.

19          So Mr. Cohen, let me turn to you.  Sir, now

20   recognizing that there is some outstanding discovery, where are

21   we with regard to a mitigation packet?

22          MR. COHEN:  Your Honor, when we met early on in the

23   case, I had suggested January as a reasonable time.  We had

24   also scheduled a status conference for August, which was six

25   months out, where we were going to address scheduling.  But

1    since Your Honor asked, the volume of material we received in

2    the last discovery response, it's almost hard to explain.

3    There are hours upon hours of video.  I think that Mr. Dopico

4    and I have both made significant progress towards viewing

5    almost the video in its entirety.  The issue and the problem is

6    the digital information.  It is so large, from so many

7    different sources, that as of today our IT people in our office

8    are still having difficulty combining that and putting it in a

9    format that is easily available for the attorneys to review.

10        Once that is done -- and they've been working on it

11   quite diligently -- and we're hoping that that should be done

12   sometime next week -- then we just need to begin to review that

13   information.

14        And as the Government indicated, we're talking about

15   two two terabyte hard drives worth of material.  So it's very

16   time consuming.  And although, again, we are tasked with

17   many -- or many people in our office are tasked with

18   representing Mr. Santiago-Ruiz, as the two primary counsel in

19   the case, both Mr. Dopico and I feel it's our obligation to

20   review the discovery in its entirety, and it's just very time

21   consuming.  I don't even know what's still left for us to

22   review in terms of that digital information because we haven't

23   had a chance to look at it yet.

24        So I would think that my initial estimate -- in fact,

25   if anything, I think maybe that was a little bit too

1    conservative.  But I still feel that January as a time to

2    submit our mitigation package to the Government is realistic.

3           MR. DEL TORO:  And Judge, can I make one clarification

4    with respect to the discovery?  I think I missed one category,

5    and I apologize.  There is -- obviously, a tremendous amount of

6    physical evidence was recovered from the crime scene, as you

7    can imagine.  There was a tremendous amount of investigative

8    work, forensic work that was done at the time.  A lot of that

9    physical evidence has been submitted for forensic examination

10   at the laboratory in Quantico.  And so that actually is

11   outstanding and I neglected to mention it.  We're still waiting

12   for reports from the forensic experts from Quantico and we're

13   hoping to get them in the very near future.  We're constantly

14   asking for them to expedite them.  So that is still pending.

15           With respect to Mr. Cohen's reference to digital

16   materials and this two terabyte hard drive, there are two hard

17   drives.  One of them is just really video surveillance from a

18   motel where the Defendant was staying, and so we find the same

19   difficulties in viewing it.  And we haven't really found

20   anything very significant, although maybe there is.

21           We're working with, again, the experts at Quantico to

22   see if there is a way that we can make some of this -- all this

23   video surveillance viewable in a way that's more practical.

24   And if we have that ability to get that -- for example, the

25   airport surveillance at the airport in Fort Lauderdale were a

1    number of different recordings from different cameras that had

2    to be synthesized.  In the second discovery response, we

3    provided to the Defense a compilation video that essentially

4    follows the Defendant throughout the airport out of the

5    available video.  And that was done for us at the laboratory in

6    Quantico.  And so they're trying to do similar things with the

7    rest of the video surveillance and digital evidence.  And if

8    they are successful, then we will turn that over to the Defense

9    as soon as possible to save everybody time in reviewing it.

10            THE COURT:  And I understood by your supplemental

11   response that you have already turned this information over by

12   way of these two terabyte hard drives.

13            MR. DEL TORO:  The digital evidence, yes, Judge, in

14   raw form.  So for example, you have video surveillance from

15   different places that have multiple cameras.  And you know,

16   it's a little time consuming to go through each camera to find,

17   for example, video captures of the Defendant.  What we're

18   trying to do with the experts at Quantico is trying to get them

19   to make compilation videos like they did at the airport at Fort

20   Lauderdale, that video, similarly with the other video that we

21   have, so that we can then just watch a continuous stream of

22   compilation video that shows what's relevant.

23            THE COURT:  But short of a compilation video, you

24   provided the raw footage on these two terabyte hard drives?

25            MR. DEL TORO:  Yes.

1        THE COURT:  All right.  So I want to make certain

2   that, with the exception of this compilation, Mr. Del Toro,

3   other than what you have advised the Court in terms of the

4   outstanding discovery, is there anything else that you're

5   anticipating needs to be provided to the Defense in order for

6   the Defense to begin working on a mitigation packet?

7        MR. DEL TORO:  Judge, I don't think that what is

8   outstanding is necessarily germane to a mitigation packet.  In

9   other words, what we're looking at is evidence of the crime or

10  evidence of intent.  Perhaps it is.

11       Maybe with the exception of potential search warrant

12  returns, if they're done on social media accounts or emails or

13  things like that.  But other than that, what we've turned over

14  is the bulk of the discovery.  It's what -- you know, it's

15  really the largest volume and it contains all of the evidence

16  of the crime, other than the forensic reports.

17       THE COURT:  All right.  Thank you.

18       And Mr. Cohen, have you and your team begun looking at

19  what's contained on the two terabyte hard drives?

20       MR. COHEN:  Yes.  Those were the videos I referred to

21  previously.  Just to give Your Honor a sense, before we came to

22  court today, I was reviewing a video from the Anchorage

23  airport.  The video is two hours and 14 minutes.  We have no

24  idea when and if Mr. Santiago-Ruiz appears within that video.

25  So it's necessary to review the entire two hours and 14

1    minutes.

2             THE COURT:  And I understand that's where the

3    compilation would be helpful to the Defense.

4             MR. COHEN:  But that's just -- I'm sorry.  I didn't

5    mean to cut off -- that's just one of many videos that have

6    been provided to us.  So when I say there are hours and hours

7    of videos that need to be reviewed, that's what it is that

8    we're talking about and we need to be careful in our review

9    that we painstakingly look for Mr. Santiago-Ruiz whenever he

10   appears.

11            The issue about the video at the motel, the Government

12   may not feel that there's any potential mitigation to it.  We

13   haven't been able to view that yet because that's part of the

14   discovery that our IT team is still working on.  But if it

15   captures Mr. Santiago-Ruiz acting in a particular manner, it

16   may not be evidence of what happened on January 6th, but it may

17   be significant evidence as to what his mental condition was

18   like in the days preceding January 6th.  So it's not something

19   that we can just take lightly.  It's something that, again, we

20   need to review carefully to detect when he is viewed on those

21   materials, and what his activity is like, and what his conduct

22   is like when he is viewed.

23            So we need to go through the entirety of those

24   surveillance tapes to make sure that we're not missing anything

25   that may be helpful to us in our submission to the DOJ.

```
1            THE COURT:  Understood.

2            And Mr. Cohen, with regard to Mr. Santiago-Ruiz's

3   medical records -- that includes all medical records, not just

4   from the Broward Jail and FDC -- have you and your team

5   received all of the medical records that would be pertinent to

6   a mitigation packet?

7            MR. COHEN:  We believe that we have.  We are still

8   exploring a few other possibilities based on the multiple

9   jurisdictions that he lived in in the months and years

10  preceding the incident.  We are confident about some of those

11  jurisdictions that we have everything that we need, but we are

12  still exploring other areas that we may need to look into

13  before we can start putting our thoughts down on paper in terms

14  of mitigation.

15           THE COURT:  But at this point, are you waiting for any

16  records that you have requested and have not yet received?

17           MR. COHEN:  No.  There's nothing outstanding in terms

18  of things that we have filed releases for or subpoenas for, but

19  we are exploring other avenues of mitigation which may reveal

20  that there are records outstanding.

21           I will note to the Court that we have been having some

22  difficulty receiving records from the Veterans Administration

23  and from the military, specifically medical records concerning

24  the military.  We've received other records.  And we are having

25  our investigators, on a weekly basis, reach out to the people
```

1    that we feel have those records to see when we might be able to

2    obtain them.  So yes, in terms of the Court's question, those

3    things are outstanding.

4         THE COURT:  So at this point, when do you anticipate

5    that you're going to receive -- absent what the Government has

6    an obligation to provide -- and certainly Mr. Del Toro advised

7    the Court of what the Government is anticipating, and that

8    includes the compilation with regard to the videos.  But what

9    specifically are you waiting to receive that you have

10   requested, that you have made a records request for that you

11   have not received?

12        MR. COHEN:  The Government has provided us with VA

13   records from Alaska.  We are waiting for some -- and I think

14   they may have provided some from Puerto Rico.  We believe there

15   are other VA records from Puerto Rico that we have requested.

16        The second thing is, again, the Government, pursuant

17   to their discovery obligations, have provided us with military

18   records.  They do not contain any medical records of

19   Mr. Santiago-Ruiz while he was in the National Guard, and we

20   are waiting for those.  And we have been seeking those records

21   since very early on in the case and we are continuing to seek

22   them.  So I don't know if I have an answer to the Court's

23   question as to when we can expect them.

24        THE COURT:  And I'm looking for guidance from the

25   parties.  And I understand, Mr. Cohen, that you believe that it

1   will take you through to the end of the year in terms of a

2   mitigation packet, but I'm mindful that Mr. Santiago-Ruiz was

3   arraigned on January 30th.  And while I certainly want to

4   provide a reasonable amount of time, there comes a point where

5   the Court needs to set some deadlines, but I want them to be

6   realistic.  So is there anything further, Mr. Cohen, on your

7   part that you have not advised the Court that you are waiting

8   to receive in order to review and prepare a mitigation packet

9   to provide to the Government?

10          MR. COHEN:  There are -- in terms of outstanding

11  requests and subpoenas, except for what I've already advised

12  the Court, there is none.  Our mitigation investigation is

13  proceeding.  I'm not sure if that investigation will reveal the

14  possible existence of other records.  So again, I'm not trying

15  to be glib with the Court or evasive, but I can't give the

16  Court an absolute expectation of when all this material will be

17  provided.

18          And I would also advise the Court that based on my

19  experience and what I know of similar types of cases, both in

20  this jurisdiction and others, it is not at all unusual for

21  submissions to be due to the local US Attorney's Office 12

22  months, 13 months, 14 months after the time of arraignment.

23          So I don't think that what's happening in this case is

24  unusual in terms of the time that we feel that we need.  And in

25  fact, in terms of the significance of the case, the number of

1  people involved, the number of jurisdictions involved, the

2  amount of material that the Government's provided, I think

3  we're making significant progress.  But as the Court notes,

4  based on the nature of the charges and what the possible

5  consequences are, we need to be particularly careful in making

6  sure that we do everything that we're obligated to do both by

7  the ABA guidelines and, more importantly, by the Sixth

8  Amendment.

9          THE COURT:  Understood, Mr. Cohen.

10          And Mr. Del Toro, is there anything further that you

11  need to bring to the Court's attention with regard to setting a

12  schedule that's realistic to both the Government and the

13  Defendant?

14          MR. DEL TORO:  Well, Judge, I wanted to -- well, first

15  of all, I wanted to make one clarification.  We did provide

16  some medical records from the Puerto Rico National Guard.  They

17  were in the second discovery round, with respect to the first

18  supplemental response of the discovery order, and they included

19  about 153 pages of medical records independent of the other

20  records -- the VA records that Mr. Cohen talked about.  So some

21  of that is there.  It may not be all of what they're looking

22  for.

23          Secondly, as the Court knows, we have -- pursuant to

24  Rule 16, we have made a demand for reciprocal discovery.  We

25  have turned over, obviously, an enormous amount of discovery.

1    We have not received reciprocal discovery.  I would just ask

2    for the Defense to provide, for example, the FDC records which

3    are still outstanding and they already have or any other

4    records really that are relevant to mitigation because, after

5    all, we are trying to arrive at the right recommendation here

6    with respect to the capital -- potential capital implications.

7    And so the more mitigation evidence that we have early on, the

8    better informed decision we can make with respect to that

9    recommendation.

10           THE COURT:  Mr. Cohen, what is the Defendant's

11   intention?  Was it the Defendant's intention to hold onto those

12   records and to submit one package to the Government?

13           MR. COHEN:  That is the way we usually do it.  And the

14   reason that we do is that because our investigation is ongoing.

15   We may not know exactly what our mitigation is going to be

16   until it's complete.  And to turn over records now that may not

17   be germane to our eventual presentation, we think is

18   foolhearted.

19           MR. DEL TORO:  Sometimes this is a quixotic, you know,

20   journey that we go on asking the Defense for reciprocal

21   discovery because the rules provide for it.  But my request

22   stands.

23           THE COURT:  And as we spent a lot of time at the last

24   setting, the Court was educated by each of you as to the

25   specific protocol that the US Attorney's Office was waiting for

20

```
 1    a mitigation packet in which to submit that to the Attorney

 2    General.  So I am going by the protocol that has been

 3    established.  So I understand that this is an unusual case;

 4    however, there is certainly an opportunity for both the

 5    Government and the Defendant -- and Mr. Cohen, you can sit,

 6    unless there was something that you wanted to say to me.

 7    There's certainly an opportunity for the Government and the

 8    Defendant to do your respective due diligence and to adhere to

 9    a time period, and that is the following:

10            I am going to require not that the Defendant provide

11    piecemeal records, but that the Defendant provide a full

12    mitigation packet by Friday, November 3rd.  That certainly is

13    sufficient time, given what you have advised the Court that you

14    need to obtain in order to prepare that report.

15            At the same time, Mr. Del Toro, with regard to this

16    compilation, if that is in the Government's hands, I would

17    request that you turn that over to the Defense to assist them.

18            MR. DEL TORO:  It's not yet.  As soon as we have it,

19    Judge, we will turn it over, if, in fact, they were able to

20    compile it.

21            THE COURT:  As the Court did set a date for trial, it

22    was originally set for trial on October 2, that certainly is

23    not going to be realistic, given the date for the mitigation

24    packet.  And I believe that that is a reasonable amount of time

25    for the Defense team to provide the packet to the Government
```

21

1    for its review.

2            At the same time, I am going to require by June 23rd,

3    Mr. Cohen, that you provide under seal to the Court all of

4    Mr. Santiago-Ruiz's medical records, specifically with regard

5    to the Broward County Jail and the FDC for the Court's review,

6    since the Court is under a continuing obligation to monitor

7    Mr. Santiago-Ruiz's medical condition.

8            Mr. Santiago-Ruiz, the Court has set certain deadlines

9    that will delay the trial that has been scheduled.  Do you

10   understand that, sir?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Do you understand what your attorneys are

13   going to be working on between now and the date of

14   November 3rd?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  What is that, sir?

17           THE DEFENDANT:  Reviewing the videos, trying to make a

18   compilation of the videos, more VA records, and I think that's

19   all for now, I guess.

20           THE COURT:  And Mr. Santiago-Ruiz, I want to ensure

21   that -- Mr. Cohen and Mr. Dopico have advised that they have no

22   concerns of your ability to assist in your defense.  Have you

23   been meeting with your attorneys?

24           THE DEFENDANT:  Yes.

25           THE COURT:  And have you been continuing to take the

1    medication that's been prescribed?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And do you understand, sir, that by

4    setting the date of November 3rd for your defense attorneys to

5    work toward providing information to the Government as

6    mitigation, and allowing the Government to make a decision as

7    to how it will proceed with this case, that it may delay your

8    trial?  Do you understand that, Mr. Santiago-Ruiz?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you have any objection to a delay of

11   your trial, sir?

12           THE DEFENDANT:  No.

13           THE COURT:  The Court does believe that the interests

14   of justice served by a continuance outweigh any interest of the

15   public or the Defendant in a speedy trial.  And as a result,

16   the period of delay resulting from this continuance -- and that

17   is from today's date up until the new trial date -- and giving

18   time for the mitigation packet to be provided and for the

19   Government to make a decision, I'm going to reset this case for

20   trial for a calendar call on January 16th, 2018, at 1:30 p.m.,

21   with a trial period commencing on January 22nd, 2018.

22           As well, the Court will schedule a status conference

23   on September 8th, at 1:30 p.m.  At that time, the parties will

24   apprise the Court of any issues relating to your inability to

25   obtain the needed information.  But I would suspect at that

1    time, Mr. Cohen, that you and your team would be well underway

2    preparing that packet.

3              So that will be the date that the delay resulting from

4    this continuance will begin, up until the date of the trial,

5    which will be January 22nd, and that time is excludable under

6    the Speedy Trial Act.

7              And there is no objection from the Defendant,

8    Mr. Cohen?

9              MR. COHEN:  From the Defendant personally or from the

10   Defense?

11             THE COURT:  From the Defense team.

12             MR. COHEN:  In terms of the trial setting?

13             THE COURT:  That's correct.

14             MR. COHEN:  Your Honor, we believe that it's

15   premature.  We've stated our reasons why we believe it.  We

16   will certainly do our best to work diligently towards complying

17   with the Court's order.

18             THE COURT:  And the Court believes that a benchmark in

19   terms of setting a time for trial is appropriate in this case.

20             Does the Government wish to be heard?

21             MR. DEL TORO:  We have no objections to the Court's

22   setting, Judge.

23             THE COURT:  And Mr. Santiago-Ruiz, do you have any

24   objection to that delay of your trial?

25             THE DEFENDANT:  No, Your Honor.

1        THE COURT:  Is there anything further that the

2   Government wants to bring to the Court's attention that it

3   needs to be aware of?

4        MR. DEL TORO:  Nothing further, Judge.

5        THE COURT:  Mr. Cohen, on behalf of the Defense?

6        MR. COHEN:  Your Honor, there's a status conference

7   presently scheduled for August 4th.  Is that going to be

8   canceled?

9        THE COURT:  I'm going to cancel that.  I'm going to

10  reset the status conference for September 8th, with the

11  understanding that the Court will receive all of

12  Mr. Santiago-Ruiz's medical records under seal for the Court's

13  review.

14        MR. COHEN:  Yes, ma'am.

15        THE COURT:  Is there anything further?

16        MR. COHEN:  Not on behalf of the Defense.

17        MR. DEL TORO:  Nothing further, Judge.

18        THE COURT:  All right.  We'll see you at that time.

19        MR. DEL TORO:  Thank you.

20      (Proceedings concluded at 3:04 p.m.)

21

22

23

24

25

1    UNITED STATES OF AMERICA      )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                          C E R T I F I C A T E

5            I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at

8    and reported in machine shorthand the proceedings had the 9th

9    day of June, 2017, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12           I further certify that this transcript contains pages

13   1 - 25.

14           IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida this 14th day of July, 2017.

16

17                       /s/Yvette Hernandez
                         Yvette Hernandez, CSR, RPR, CLR
18                       Certified Shorthand Reporter
                         400 North Miami Avenue, 10-2
19                       Miami, Florida 33128
                         (305) 523-5698
20                       yvette_hernandez@flsd.uscourts.gov

21

22

23

24

25